1

2

3

4               **UNITED STATES DISTRICT COURT**
                    **DISTRICT OF NEVADA**
5                       **RENO, NEVADA**

6

7
THE PEOPLE OF THE STATE OF          )   BK-10-52249 (Chapter 11)
8 CALIFORNIA, *EX REL.*, EDMUND G.   )   Jointly Administered with:
BROWN JR., ATTORNEY GENERAL OF THE )
9 STATE OF CALIFORNIA,               )   10-52249 ARVCO Capital
                                     )            Research, LLC
10      Appellant,                   )   10-52251 ARVCO Financial
                                     )            Ventures, LLC
11 vs.                               )   10-52252 ARVCO Art, Inc.
                                     )
12 ALFRED J.R. VILLALOBOS and ARVCO  )   **3:10-CV-00598-ECR-RAM**
CAPITAL RESEARCH, LLC, a Nevada      )
13 limited liability company,        )
                                     )   **Order**
14      Appellees.                   )
                                     )
15 ─────────────────────────────────)

16
        This case is an appeal from an order of the bankruptcy court,
17
docketed on September 13, 2010, denying Appellant's motion to exempt
18
the People of the State of California's enforcement action filed in
19
California state court from the automatic stay through the police
20
power exception contained in 11 U.S.C. § 362(b)(4).  The question
21
presented by the appeal is whether the bankruptcy court erred in
22
finding that the People of the State of California's enforcement
23
action is not an exercise of a governmental unit's police and
24
regulatory power, and therefore not exempt from the automatic stay.
25
For the reasons stated below, the bankruptcy court's order will be
26
reversed.
27

28

# I. Background

On May 5, 2010, Appellant filed a civil law enforcement action ("Enforcement Action") in Los Angeles County Superior Court against Alfred Villalobos ("Villalobos"), ARVCO Capital Research ("ARVCO"), and Federico Buenrostro, alleging a fraudulent scheme to obtain placement agent commissions by corrupting the investment decision-making process of California Public Employees' Retirement System ("CalPERS"). (Appellant's Opening Br. at 2 (#15).) The Enforcement Action alleges three causes of action: securities fraud in violation of California Corporations Code §§ 25216(a), 25403 (the "securities fraud claim"); sales of securities without a broker-dealer certificate in violation of California Corporations Code §§ 25210, 25403 (the "claim for unlicensed activities"); and unfair competition in violation of California Business and Professions Code § 17200 *et seq.* (the "claim for unfair competition"). (Id.)

The various claims filed in the Enforcement Action are based on allegations that Villalobos and ARVCO (collectively "Appellees") "provided various undisclosed gifts and gratuities to the decision-makers of CalPERS . . . to influence them into making investments in various private equity funds . . . in order to obtain more than $47 million in placement agent commissions." (Id.) The Enforcement Action further alleged that Appellees made false representations to their clients to obtain payment of their commissions. (Id.) The claim for unlicensed activities is based on allegations that Appellees were unlicensed broker-dealers at the time of such activities. (Id. at 3.)

2

On the date the Enforcement Action was filed, Judge Gerald
Rosenberg of the Los Angeles County Superior Court, upon motion by
Appellant, appointed a receiver to take possession, custody, and
control over the assets of Appellees. (Id.) On May 28, 2010, after
conducting a hearing, Judge John H. Reid of the Los Angeles County
Superior Court confirmed the appointment of a receiver. (Id. at 4.

On June 9, 2010, Villalobos filed a Chapter 11 bankruptcy
petition in the United States Bankruptcy Court of the District of
Nevada for himself and the three entities controlled by him, ARVCO
Capital Research, LLC, ARVCO Financial Ventures, LLC, and ARVCO ART,
Inc. (Id.) On June 29, 2010, Appellant filed a motion to exempt
its Enforcement Action from the automatic stay based on the police
power exemption provision (the "Police Power Exemption Motion").
(Id. at 5.) On August 31, 2010, the bankruptcy court held a hearing
on the Police Power Exemption Motion. (Id. at 8.) On September 13,
2010, the bankruptcy court issued an order denying the Police Power
Exemption Motion. (Id. at 10.)

On September 24, 2010, Appellant filed a notice of appeal (#1)
with the Clerk of the bankruptcy court. (Notice of Appeal at 1
(#1).) The appeal was referred to this Court upon Appellant's
election for hearing before the United States District Court. (Id.)
On November 12, 2010, Appellant filed its opening brief (#15). On
December 2, 2010, Appellees filed their answering brief (#18). On
December 14, 2010, Appellant filed its reply brief (#21).

///////////////
///////////////

3

## II. Jurisdiction

United States District Courts have jurisdiction to hear appeals from "final judgments, orders, and decrees" of the bankruptcy court pursuant to 28 U.S.C. § 158(a)(1), as well as certain interlocutory orders described in 28 U.S.C. § 158(a)(2).  A party may also, "with leave of the court," appeal from other interlocutory orders and decrees pursuant to 28 U.S.C. § 158(a)(3).  See In re City of Desert Hot Springs, 339 F.3d 782, 787 (9th Cir. 2003) (noting that the district court must hear appeals from final decisions of the bankruptcy courts, but it is within the discretion of the district court to hear appeals of interlocutory orders).

Here, the bankruptcy court's order with respect to Appellant's motion constitutes a final order within the meaning of 28 U.S.C. § 158(a)(1) because it represents the bankruptcy court's final resolution of the parties' rights with regard to Appellant's claim. See id. at 788 (describing the Ninth Circuit's "'pragmatic' approach to deciding whether orders in bankruptcy cases are final, 'recognizing that certain proceedings in a bankruptcy case are so distinct and conclusive either to the rights of individual parties or the ultimate outcome of the case that final decisions as to them should be appealable as of right.'") (quoting In re Mason, 709 F.2d 1313, 1317 (9th Cir. 1983)).  As such, we have jurisdiction over the appeal pursuant to section 158(a).

## III. Standard of Review

We review the bankruptcy court's interpretation of 11 U.S.C. § 364(b)(4) and the applicability of the police power exemption de

4

1  *novo.*   In re First Alliance Mortgage Co., 263 B.R. 99, 106 (B.A.P.

2  9th Cir. 2001).

3

4  ### IV. Discussion

5      Appellant asserts that the bankruptcy court erred in examining

6  the merits of the Enforcement Action, and that the bankruptcy court

7  misapplied the law pertaining to the pecuniary purpose and public

8  policy tests by holding that a permanent injunction or a legitimate

9  claim for injunctive relief is required before the action may be

10  exempted.

11      **A. The Police Power Exemption**

12      The issue to be resolved is whether the claims brought in the

13  Enforcement Action constitute police and regulatory power actions

14  that are exempt from the automatic stay normally applicable once a

15  debtor files for bankruptcy.  See 11 U.S.C. § 362(b)(4).  That

16  section provides that a governmental unit's action or proceeding "to

17  enforce the governmental unit's police and regulatory power,

18  including the enforcement of a judgment other than a money judgment"

19  is exempt from the automatic stay.  Id.

20      The Ninth Circuit applies two alternative tests to determine

21  whether an action is in exercise of a governmental unit's police and

22  regulatory power.  City & County of San Francisco v. PG & E Corp.,

23  433 F.3d 1115, 1123-24 (9th Cir. 2006) ("PG & E").  The tests are

24  the "pecuniary purpose" test and the "public policy" test.  Id. at

25  1124.  "Satisfaction of either test will suffice to exempt the

26  action from the reach of the automatic stay."  Id.  Under the

27  pecuniary purpose test, "the court determines whether the government

28

1   action relates primarily to the protection of the government's
2   pecuniary interest in the debtor's property or to matters of safety
3   and welfare." Id. at 1124-25.  Under the public policy test, "the
4   court determines whether the government seeks to 'effectuate public
5   policy' or to adjudicate 'private rights.'" Id. at 1125.

6        The bankruptcy court determined that the Enforcement Action
7   fails to satisfy either of the two applicable tests, and therefore,
8   the Enforcement Action is subject to the automatic stay.

9        **B. The Bankruptcy Court's Ruling on the Police Power Exemption**
10  **Motion**

11            1. The Merits of the Enforcement Action Should Not Be
12  Considered.

13       The bankruptcy court correctly stated that "courts perform a
14  case-by-case, fact-specific analysis as to the claims in each
15  particular action to determine whether or not they are excepted from
16  the broad reach of the automatic stay."  (Appellant's Appendix (AA),
17  Bankr. Ct. Order at 20 (#15-25).)  The fact-specific analysis,
18  however, should not extend to a determination of the merits and
19  legitimacy of an action.

20       In Board of Governors of Federal Reserve Systems v. MCorp
21  Financial, the Supreme Court of the United States considered the
22  argument that a court must determine whether the proposed exercise
23  of police or regulatory power is legitimate when applying 11 U.S.C.
24  § 362(b)(4).  502 U.S. 32, 40 (1991).  The Supreme Court observed
25  that such an argument conflicts with the "limited authority Congress
26  has vested in bankruptcy courts."  The bankruptcy court in this case
27  distinguished MCorp because the action therein was governed by the
28                                    6

1  Financial Institutions Supervisory Act ("FISA"), which expressly
2  precluded review.  Id. at 44.  While the bankruptcy court is correct
3  that the holding in MCorp is not expressly applicable to this case,
4  the Supreme Court's observation that bankruptcy courts should not
5  determine the legitimacy of a governmental unit's police power
6  action when applying 11 U.S.C. § 362(b)(4) has been adopted by the
7  Ninth Circuit in cases without express congressional preclusion of
8  review as in MCorp.[1]

9       In PG & E, the Ninth Circuit stated that "[t]hrough various
10  provisions of the Bankruptcy Code, Congress has evidenced its intent
11  that a governmental unit's police or regulatory action not be
12  litigated in federal bankruptcy court."  433 F.3d at 1127.  The
13  Ninth Circuit acknowledges, as the bankruptcy court in this case
14  has, that the determination of whether a particular governmental
15  action qualifies as a police or regulatory action "must be made on
16  the basis of a case-specific inquiry."  Id.  That inquiry, however,
17  does not extend to determining whether the action is meritorious in
18  the manner that the bankruptcy court herein has done.  In our view,
19  and according to Ninth Circuit precedent, the inquiry turns upon the
20  two tests, pecuniary purpose and public policy, which we examine in
21  a later section.  Those tests, however, do not require that the
22  bankruptcy court delve into witness depositions and evidence as to
23  the legitimacy of the government's case.  They merely require
24  examination of the allegations of the government's case, to

25
26       [1] Furthermore, Appellees acknowledge that "MCorp stands for the
    simple proposition - not disputed by the Debtors - that courts should
    not examine the legitimacy of a proposed exercise of a governmental
27  unit's police or regulatory power."

28                                7

1  determine whether the action has more of a private or pecuniary
2  nature, or a public one.

3       We do not believe that the bankruptcy court should,
4  essentially, adjudicate the merits of a state court action that is
5  pending in a different court, and determine whether the government
6  is entitled to relief and thereby grant or deny exemption from the
7  automatic stay.  The proper forum for determining the merits of the
8  case is the court in which that action is brought.  The bankruptcy
9  court is not authorized, as the Supreme Court noted in MCorp, to
10  make such determinations.  See MCorp, 502 U.S. at 40; see also PG &
11  E, 433 F.3d at 1127.  If the action, through an objective but case-
12  specific inquiry, is determined to be exempt from the automatic
13  stay, the state court will doubtless examine the legitimacy of the
14  government's case through standard procedures such as motions to
15  dismiss and motions for summary judgment.

16       In this case, the bankruptcy court noted that "the AG fails the
17  public purpose test because it is seeking monetary relief for
18  CalPERS, not for creditors of the estates." (AA, Bankr. Ct. Order at
19  21 (#15-25).) While we disagree with the conclusion regarding the
20  public purpose test, we find that the bankruptcy court made the
21  proper inquiry to determine whether the Enforcement Action should be
22  exempt from the automatic stay when it examined the specific
23  allegations and facts of the Enforcement Action.  However, the
24  bankruptcy court erred in observing that "the sworn deposition
25  testimony of CalPERS' own witnesses exposes the misrepresentations
26  contained in the AG's allegations.  As such, no proper purpose of
27  any kind can be served by allowing the AG to pursue those claims in

28

1   state court." (Id. at 22.)   This type of inquiry into the merits and
2   legitimacy of the Enforcement Action is not proper, and should not
3   have been part of the bankruptcy court's decision in disallowing the
4   automatic stay exemption.   Such inquiries are littered in the
5   bankruptcy court's decision.   For example, the bankruptcy court
6   stated that "[i]t is also clear from the CalPERS witnesses'
7   testimony that nothing Mr. Villalobos is alleged to have done
8   affected CalPERS' investment decisions or caused them damages of any
9   kind . . . ."   (Id. at 23.)   These observations led to the
10  bankruptcy court's conclusion that "the AG's assertion that Mr.
11  Villalobos committed any violation of section 25216(a) of the
12  California Corporations Code or section 17200 of the Business and
13  Professions Code has no merit."   (Id.)

14      We do not believe that the bankruptcy court's inquiry into the
15  merits of the Enforcement Action should have been a deciding factor
16  in its decision to deny exemption from the automatic stay.   This
17  error alone would, in our view, require that we reverse the
18  bankruptcy court's decision.   However, we must also address the
19  additional errors that Appellant argues were made by the bankruptcy
20  court in deciding the Police Power Exemption Motion.

21          2. Urgent Need to Prevent Imminent Harm is Not Required
22  for the Police Power Exemption.

23      We disagree with the bankruptcy court's determination that the
24  police power exemption only applies to actions which are urgently
25  needed to protect public safety and health.   The bankruptcy court
26  based its ruling on In re Four Winds Enterprises, Inc., in which the
27  bankruptcy court of the Southern District of California stated that

28                                      9

"[c]ourt decisions construing the exemption have narrowed it to those exercises of police power which are urgently needed to protect the public health and welfare."  87 B.R. 624, 629 (Bankr. S.D. Cal. 1988) (citing In re IDH Realty, Inc., 16 B.R. 55, 57 (Bankr. E.D.N.Y. 1981)).  The Ninth Circuit Court of Appeals, however, has never held that an urgent need, or the prevention of ongoing or future harm, is required for an exemption from the automatic stay. In fact, the Ninth Circuit has affirmed exemptions in cases where there have only been past violations.  See, e.g., In re Berg, 230 F.3d 1165, (9th Cir. 2000) (affirming the exemption of sanctions for frivolous conduct from the automatic stay).

The Fifth Circuit Court of Appeals confronted the argument that the police power exemption is "limited to those situations where 'imminent and identifiable harm' to the public health and safety or 'urgent public necessity' is shown."  Matter of Commonwealth Oil Refining Co., Inc., 805 F.2d 1175, 1184 (5th Cir. 1986), *cert. denied*, 483 U.S. 1005 (1987).  The Fifth Circuit held that 11 U.S.C. § 362(b)(4) "does not limit the exercise of police or regulatory powers to instances where there can be shown imminent and identifiable harm or urgent public necessity."  Id.  In Oil Refining, appellants argued, as Appellees do in our case, that legislative history indicating that § 362(b)(4) is "intended to be given a narrow construction in order to permit governmental units to pursue actions to protect the public health and safety and not to apply to actions by a governmental unit to protect a pecuniary interest in property of the debtor or property of the estate."  Id. at n.7 (citing 124 Cong. Rec. H11089).  The Fifth Circuit stated

10

1  that the floor statement that § 362(b)(4) should be construed

2  narrowly applies, by its language, only to actions which are "aimed

3  at protecting the government's monetary interest."  Id. at n.7.  The

4  Eighth Circuit Court of Appeals agrees with the Fifth Circuit's

5  conclusion that imminent and identifiable harm or urgent public

6  necessity is not required for the police power exemption, and

7  nothing in the statute or the legislative history is to the

8  contrary.  In re Commonwealth Companies, Inc., 913 F.2d 518, 522

9  (8th Cir. 1990).

10       All of the cases relied upon by the bankruptcy court are lower

11 court decisions that have been "roundly criticized."  Matter of

12 Scott Housing Sys., Inc., 91 B.R. 190, 193 n.2 (Bankr. S.D. Ga.

13 1988).  While there is no Ninth Circuit case directly on point, we

14 are satisfied that the Eighth Circuit and Fifth Circuit holdings are

15 more persuasive than the cases the bankruptcy court cited in its

16 decision.  Therefore, we conclude that the bankruptcy court erred in

17 determining that the police power exemption should only be granted

18 for actions that are urgently needed to protect public health and

19 welfare.

20       3. Injunctive Relief is Not Required for the Police Power

21 Exemption.

22       Nor do we find that ongoing or future harm is required for

23 exemption from the automatic stay.  Punishment for past conduct is

24 part of a governmental unit's police power.  See, e.g., Penn Terra

25 Ltd. v. Dep't of Envtl. Res., Commonwealth of Pennsylvania, 733 F.2d

26 267, 274 n.7 (3d Cir. 1984).  Punishment in the form of civil

27 penalties, disgorgement, and restitution serves a public, rather

28                              11

than a pecuniary, purpose.  See, e.g., PG & E, 433 F.3d at 1125.  We
are unable to find binding decisions that discuss the necessity of
ongoing or future harm, and therefore, hold that the bankruptcy
court erred in giving considerable weight to the apparent lack of
future harm.  For instance, the bankruptcy court noted that "because
ARVCO Capital has not operated since 2008 . . . [p]ermitting these
claims to go forward in the state court would not prevent ongoing or
future violations of law, nor would it protect any public safety or
health purpose or effectuate public policy." (AA, Bankruptcy Ct.
Order at 21 (#15-25).)  This blanket statement seems to imply that
there is no public benefit in punishment and deterrence of
fraudulent behavior that harms the public.  Surely, punishment of
fraudulent and criminal behavior serves the purpose of providing at
least some deterrence of future fraudulent and criminal behavior.
See, e.g., In re Charter First Mortgage., Inc., 42 B.R. 380, 384
(Bankr. Or. 1984) ("The authority to protect the public welfare
would be largely meaningless without the power to punish and
prevent.").  The circumstance that the defendants in the Enforcement
Action have apparently ceased fraudulent behavior does not lead to
the conclusion that a governmental unit's action against the
defendants' past behavior is moot or irrelevant to public welfare.

    Furthermore, we note that the Enforcement Action does seek
injunctive relief against the defendants to prevent the defendants
from engaging in any conduct violating the laws relating to
unlicensed activities and unfair competition and securities fraud.
While the bankruptcy court seems to have concluded that such relief
is moot because Appellees have already ceased any objectionable

12

1  activities, we do not think that the court should have considered

2  evidence regarding the merits and necessity of injunctive relief.

3  Whether Appellees' current activities are sufficient to rule out the

4  necessity for a permanent injunction should be determined in the

5  Enforcement Action.  <u>See, e.g.</u>, <u>Charter</u>, 42 B.R. at 384.  Even if

6  the need for injunctive relief is indeed moot, the absence of

7  injunctive relief does not take the Enforcement Action outside of

8  the police power exemption.  <u>In re Commonwealth Companies, Inc.</u>, 913

9  F.2d 518, 522 (8th Cir. 1990).

10        <u>3. Civil Penalties, Disgorgement, and Restitution Remedies</u>

11  <u>Do Not Convert a Governmental Unit's Police Power Action into a</u>

12  <u>Pecuniary Action.</u>

13        In addition, the bankruptcy court stated that the Enforcement

14  Action fails the pecuniary purpose test because the Attorney General

15  seeks disgorgement, civil penalties, and restitution.  (AA, Bankr.

16  Ct. Order at 23 (#15-25).)  We disagree.  In <u>In re Berg</u>, the Ninth

17  Circuit Court of Appeals rejected the argument that an award of

18  sanctions for frivolous conduct inures to the benefit of a private

19  party and therefore fails the pecuniary purpose test as being

20  "overly-literal."  230 F.3d 1165, 1168 (9th Cir. 2000).  The Ninth

21  Circuit stated that several cases have rejected this argument; for

22  example, the Ninth Circuit cites a bankruptcy court decision

23  "not[ing] that although private parties may benefit financially from

24  sanctions, the deterrent effect of monetary penalties can be

25  essential for the government to protect its regulatory interests."

26  <u>Id.</u> (citing <u>O'Brien v. Fischel</u>, 74 B.R. 546, 551 (D. Hawaii 1987)).

27  In <u>O'Brien</u>, the bankruptcy court noted that "a proceeding resulting

28                                    13

1  in a monetary penalty may be excepted from the automatic stay as

2  much as one resulting in a prison sentence or injunctive relief"

3  because of the deterrent effect of such penalties.   74 B.R. at 551.

4       Disgorgement, civil penalties, and restitution all satisfy a

5  public purpose and the seeking thereof does not convert the action

6  into one that fails the pecuniary purpose test.   The Ninth Circuit

7  Court of Appeals observed that "[d]isgorgement is designed to

8  deprive a wrongdoer of unjust enrichment, and to deter others from

9  violating securities laws by making violations unprofitable."   Sec.

10  Exch. Comm'n v. First Pacific Bancorp, 142 F.3d 1186, 1191 (9th Cir.

11  1998).   While disgorgement may inure to the benefit of CalPERS, the

12  Ninth Circuit concluded that the primary purpose of disgorgement is

13  to deprive the wrongdoer of ill-gotten gains, and to "deter others

14  from violating securities laws by making violations unprofitable."

15  Id.

16       Civil penalties, like disgorgement, also serve a public, rather

17  than a pecuniary, purpose.   The California Supreme Court noted that

18  civil penalties are "a means of securing obedience to statutes

19  validly enacted under the police power."   Hale v. Morgan, 149 Cal.

20  Rptr. 375, 398 (Cal. 1978).   The bankruptcy court in this case noted

21  that the "AG primarily seeks pecuniary relief" and further

22  elaborated that "[f]or example, the AG's prayer for civil penalties

23  seeks 'not less that [sic] $25 million.'" (AA, Bankr. Ct. Order at

24  23 (#15-25).)   The amount of the civil penalties sought does not

25  convert the purpose of civil penalties from punishment, deterrence,

26  protection of the public into a private and pecuniary one.

27

28                                    14

As for restitution, <u>PG & E</u> controls.  The Ninth Circuit stated that:

> [r]estitution will benefit the public
> welfare by penalizing past unlawful conduct
> and deterring future wrongdoing.  There is
> no showing that the restitution claims
> primarily advance the governments' pecuniary
> interests.  In these circumstances, the
> restitution claim fits comfortably within
> section 362(b)(4)'s "police or regulatory
> power."

<u>PG & E</u>, 433 F.3d at 1125.

In sum, the bankruptcy court's conclusion that the Enforcement Action fails the pecuniary purpose test because it seeks disgorgement, civil penalties, and restitution was incorrect.

**C. The Enforcement Action Satisfies the Pecuniary Purpose Test, and Therefore, is Exempt From the Automatic Stay.**

Each of the three claims in the Enforcement Action passes the pecuniary purpose test, and therefore the entire Enforcement Action is exempt from the automatic stay.  As noted above, the Ninth Circuit applies two tests, the pecuniary purpose test and the public policy test, to determine whether a governmental action fits within the police power exemption.  <u>PG & E</u>, 433 F.3d at 1123-24. Satisfaction of either test will suffice to exempt the action from the automatic stay.  <u>Id.</u> at 1124.  Because we determine that the Enforcement Action satisfies the pecuniary purpose test, we decline

15

1 | to consider in depth whether the Enforcement Action satisfies the

2 | public policy test.

3 |     Under Ninth Circuit law, "[i]f the action primarily seeks to

4 | protect the government's pecuniary interest, the automatic stay

5 | applies.  If the suit primarily seeks to protect the public safety

6 | and welfare, the automatic stay does not apply."  Id. (citing In re

7 | Universal Life Church, Inc., 128 F.3d 1294, 1297 (9th Cir. 1997)).

8 |     We examine each claim separately to determine whether it

9 | satisfies the pecuniary purpose test, as required by PG & E.  See PG

10 | & E, 433 F.3d at 1124.

11 |       1. The Securities Fraud Claim Satisfies the Pecuniary

12 | Purpose Test.

13 |     Plaintiff's claim for securities fraud, brought under

14 | California Corporations Code section 25216(a) and section 25403,

15 | satisfies the pecuniary purpose test because the claim does not

16 | "relate[] primarily to the protection of the government's pecuniary

17 | interest in the debtor's property."  PG & E, 433 F.3d at 1124-25.

18 | Instead, the action relates to "matters of safety and welfare."  Id.

19 | at 1125.  The Ninth Circuit stated that "[w]hen the Commission sues

20 | to enforce the securities laws, it vindicates public rights and

21 | furthers the public interest."  Sec. Exch. Comm'n v. Rind, 991 F.2d

22 | 1486, 1491 (9th Cir. 1993).  The fact that the government sought

23 | disgorgement did not change the public purpose of the securities

24 | fraud claim.  Id.  In Rind, the Ninth Circuit observed that the

25 | purpose of disgorgement in securities fraud cases is to "deprive the

26 | wrongdoer of his or her unlawful profits and thereby eliminate the

27 | incentive for violating the securities laws.  The theory behind the

28 |

remedy is deterrence and not compensation." Id.  Appellant is not acting to protect its own pecuniary interest in the debtor's property, and therefore the securities fraud claim should be exempt from the automatic stay as a police power action.

        2. The Claim for Unlicensed Activities Satisfies the Pecuniary Purpose Test.

    The claim for unlicensed activities, brought under California Corporations Code section 25210 and 25403, also satisfies the pecuniary purpose test, and should be exempt from the automatic stay.  In In re Poule, the Bankruptcy Appellate Panel of the Ninth Circuit confronted a debtor charged with violations of the Contractor's Licensing Law, and found that the Contractor's Licensing Law "is a legitimate exercise of California's police power and the acts involved in this case are of a type the state has a legitimate interest in punishing and preventing."  91 B.R. 83, 87 (B.A.P. 9th Cir. 1988).  The Bankruptcy Appellate Panel concluded that civil penalties in that action fell within the police power exemption of section 362(b)(4).  Id.

    We conclude that the claim for unlicensed activities in this case likewise relates primarily to matters of public safety and welfare, rather than relating primarily to protection of Appellant's pecuniary interest in the debtors' property, and should be exempt from the automatic stay.

        3. The Claim for Unfair Competition Satisfies the Pecuniary Purpose Test.

    The claim for unfair competition, brought under California Business and Professions Code section 17200, satisfies the pecuniary

17

1   purpose test.  In PG & E, the Ninth Circuit examined an action
2   brought pursuant to California's Unfair Competition Law.  433 F.3d
3   at 1125.  The Ninth Circuit found that the restitution claims in
4   that action "will benefit the public welfare by penalizing past
5   unlawful conduct and deterring future wrongdoing."  Id.  The Ninth
6   Circuit noted that since the action satisfies the pecuniary interest
7   or pecuniary purpose test, it is unnecessary to reach the question
8   of the public policy test.  Id.  However, the Ninth Circuit did
9   consider that test in conjunction with the pecuniary purpose test,
10  and found that "a civil action brought by a governmental entity
11  under section 17200 'is fundamentally a law enforcement action
12  designed to protect the public and not to benefit private parties.'"
13  Id. at 1125-26 (quoting People v. Pacific Land Research Co., 569
14  P.2d 125, 129 (Cal. 1977)). There is no showing that the unfair
15  competition claim in our case is distinguishable from that in PG &
16  E.  The restitution, disgorgement, and civil penalties requested in
17  the Enforcement Action will not inure to the benefit of the
18  government.  We discussed in detail the law concerning whether such
19  monetary penalties serve a private, rather than a public, purpose,
20  and note again that the fact that such penalties may result in money
21  being paid to private parties does not change the fact that "the
22  section 17200 restitution claims filed by the governmental entities
23  in this case are fundamentally law enforcement actions designed to
24  protect the public" and therefore satisfy the public policy test.
25  Id. at 1126.
26  /////////
27
28
                                    18

1        <u>4. The Enforcement Action Does Not Primarily Seek to</u>
2  <u>Adjudicate Private Rights.</u>

3        Because we conclude that each of the claims in the Enforcement
4  Action satisfies the pecuniary purpose test, we did not previously
5  discuss the bankruptcy court's conclusion that "those individuals
6  whose pensions are maintained by CalPERS *are* a 'select group of
7  individuals,' not the public." (AA, Bankr. Ct. Order at 15 (#15-
8  25).)   The bankruptcy court further noted that "[t]he mere fact that
9  CalPERS is a large organization does not transform CalPERS from a
10 private party to society at large." (<u>Id.</u>)  We disagree with the
11 bankruptcy court's conclusion that the AG is basically litigating on
12 CalPERS' behalf, rather than on behalf of the public.  Laws
13 governing securities fraud, unlicensed activities, and unfair
14 competition are directed at addressing public harms.  The fact that
15 a specific violation of those laws directly harms only a certain
16 group in one instance does not transform governmental actions
17 seeking redress, punishment, and deterrence into private actions for
18 pecuniary advantage.

19

20                          **V. Conclusion**

21      The bankruptcy court erred in concluding that the Enforcement
22 Action is not a police power action within the meaning of 11 U.S.C.
23 § 362(b)(4) after improperly examining the merits of the Enforcement
24 Action and concluding that the purpose of the Enforcement Action is
25 primarily pecuniary.  Because each of the claims in the Enforcement
26 Action are brought to protect public safety and welfare, rather than
27 to protect Appellant's pecuniary interest in Appellees' property,

28                              19

the Enforcement Action is a police power action within the meaning
of 11 U.S.C. § 362(b)(4) and should be exempt from the automatic
stay.

   **IT IS, THEREFORE, HEREBY ORDERED** that the bankruptcy court's
Order of September 13, 2010 denying Appellant's Police Power
Exemption Motion is **REVERSED** and the matter is **REMANDED** to the
bankruptcy court for further proceedings not inconsistent with this
Order.

   The Clerk shall enter judgment accordingly.


DATED: June _24th _, 2011.

                                   _Edward C. Reed._
                                   _____
                                   UNITED STATES DISTRICT JUDGE

20